

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

February 19, 2004

The Honorable Myles K. Porter
Fannin County Attorney
Fannin County Courthouse
101 East Sam Rayburn Drive, Suite 301
Bonham, Texas 75418

Opinion No. GA-0153

Re: Whether the Fannin County Commissioners Court may retain counsel to advise it on legal matters without the consent of the county attorney (RQ-0106-GA)

Dear Mr. Porter:

You ask whether the commissioners court may retain private counsel, paying him a salary and benefits, without the county attorney's consent.[1] If it may, you ask whether the private counsel's salary and benefits may be paid from the county's road and bridge fund. *See* Porter Brief, *supra* note 1, at 2.[2]

## I. Factual Background

You state that the Fannin County Commissioners Court has retained the services of a private attorney to advise it on general legal matters without the express consent of the elected county attorney. *See id.* at 1. The county has paid the private counsel on a salary basis, including benefits, from the general fund. *See id.* You have informed the commissioners court that you do not approve of its retention of private counsel and that you are ready to provide whatever legal advice and services the court may require. *See id.* at 1-2. The court has indicated that "in light of the county's current budgetary situation," the court intends to retain its private counsel and to pay his salary and benefits from the county's road and bridge fund. *Id.* at 2.

---

[1]*See* Letter and Brief from Honorable Myles K. Porter, Fannin County Attorney, to Honorable Greg Abbott, Texas Attorney General, at 2 (Sept. 15, 2003) (on file with Opinion Committee) [hereinafter Porter Brief].

[2]You have supplemented your request with questions about paying private counsel from road and bridge money raised from property taxes, fees collected by the tax assessor-collector, grants, fines, and other specific sources. *See* Brief from Honorable Myles K. Porter, Fannin County Attorney, to Honorable Greg Abbott, Texas Attorney General (Oct. 29, 2003) (on file with Opinion Committee) [hereinafter Supplemental Brief].

## II.     Authority of County Attorney

The Texas Constitution provides that a county attorney shall be elected in counties that do not have a resident criminal district attorney.[3] *See* TEX. CONST. art. V, § 21. The legislature may create the office of district attorney and criminal district attorney. *See id.* "County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties," but if a county is included in a district with a district attorney, the legislature shall regulate the respective duties of district and county attorneys. *Id.* Because the legislature has not created the office of district attorney in Fannin County, *see* Porter Brief, *supra* note 1, at 1, the Fannin County Attorney performs the duties of a district attorney. *See* TEX. GOV'T CODE ANN. § 46.002(3) (Vernon Supp. 2004).

District and county attorneys are charged primarily with enforcing criminal statutes. *See* TEX. CONST. art. V, § 21; *Brady v. Brooks*, 89 S.W. 1052, 1056 (Tex. 1905). The legislature has granted county attorneys certain other powers and duties. A district or county attorney is required "on request . . . [to] give to a county or precinct official of his district or county a written opinion or written advice relating to the official duties of that official." TEX. GOV'T CODE ANN. § 41.007 (Vernon 1988). *See also id.* § 41.009 (county attorney authorized to sue county officer entrusted with public funds to compel performance of duties). The legislature has also charged county attorneys with civilly enforcing certain regulatory statutes. *See, e.g.,* TEX. AGRIC. CODE ANN. § 161.133 (Vernon 1982) (county attorney shall file and prosecute civil suit against corporation violating provisions on control of animal diseases); TEX. GOV'T CODE ANN. § 552.3215(c) (Vernon Supp. 2004) (county attorney's authority as to civil enforcement of Public Information Act).

It is usually not the county attorney's statutory duty "'to represent the county in its general legal business'" or in conducting "'ordinary civil actions.'" *See Guynes v. Galveston County*, 861 S.W.2d 861, 864 (Tex. 1993) (quoting *Hill Farm, Inc., v. Hill County*, 425 S.W.2d 414, 419 (Tex. Civ. App.–Waco 1968), *aff'd on other grounds*, 436 S.W.2d 320 (Tex. 1969)); Tex. Att'y Gen. LO-97-011, at 2. The legislature has, however, promulgated special statutes regulating the duties of county attorneys in specific counties, in some cases expressly requiring a county attorney to represent the county in civil actions. *See* TEX. GOV'T CODE ANN. §§ 45.171 (Vernon Supp. 2004) (County Attorney of El Paso County), .179 (County Attorney of Fort Bend County), .261 (County Attorney of Matagorda County), .201 (Vernon 1988) (County Attorney of Harris County); *see also Driscoll v. Harris County Comm'rs Ct.*, 688 S.W.2d 569, 572-74 (Tex. App.– Houston [14th Dist.] 1984, writ ref'd n.r.e.) (construing predecessor of Government Code section 45.201; noting that certain populous counties had, either with or without special legislation, provided for representation of the county in civil matters by the county attorney, district attorney, or criminal district attorney). No such special statute addresses the Fannin County Attorney's duties. *See* TEX. GOV'T CODE ANN. ch. 45 (Vernon 1988 & Supp. 2004) (section 45.174 reserved for Fannin County).

---

[3]A criminal district attorney is the district attorney in counties without a county attorney. *See* TEX. CONST. art. V, § 21; *Hill County v. Sheppard*, 178 S.W.2d 261, 263 (Tex. 1944).

### III.    Authority of Commissioners Court to Retain Private Attorneys

The commissioners court, pursuant to its implied power to accomplish its constitutional and statutory directives, may contract with experts when necessary, including attorneys. *See Guynes*, 861 S.W.2d at 863 (commissioners court established legal department to conduct county's civil legal affairs); *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 334 (Tex. 1961) (employment of expert to appraise all properties in county); *McClintock & Robertson v. Cottle Co.*, 127 S.W.2d 319, 321 (Tex. Civ. App.–Amarillo 1939, writ dism'd judgm't cor.) (county may retain private law firm to determine its amount of bonded indebtedness). The courts have upheld the power of a commissioners court to hire counsel to assist it or other officials in carrying out its responsibilities, so long as the statutory duties of other county officials are not usurped. *See Guynes*, 861 S.W.2d at 863.

*Driscoll* considered whether the commissioners court could employ legal counsel other than the Harris County Attorney to perform legal services for the board of the county toll road authority. *Driscoll*, 688 S.W.2d at 569. The court addressed the predecessor of a statute that requires the Harris County Attorney "to represent the state, Harris County, and the officials of Harris County in all civil matters pending before the courts of Harris County." TEX. GOV'T CODE ANN. § 45.201 (Vernon 1988). It noted that this provision imposed "specific duties upon the county attorney of Harris County which are not imposed upon county attorneys, criminal district attorneys or district attorneys generally." *Driscoll*, 688 S.W.2d at 579 (on motion for rehearing). Harris County was also subject to the predecessor of a statute providing that in counties with a population of more than one million, the commissioners court may employ an attorney as special counsel to be selected by the county attorney. *See* TEX. LOC. GOV'T CODE ANN. § 89.001 (Vernon 2004); *see Driscoll*, 688 S.W.2d at 579-80 (discussing predecessor of Local Government Code section 89.001, which applied to counties of more than 500,000 population). The court determined that the commissioners court had usurped the county attorney's powers under these statutes by employing legal counsel other than the Harris County Attorney to perform legal services for the county toll road authority. *See Driscoll*, 688 S.W.2d at 575-76, 582-83. *See also Terrell v. Greene*, 31 S.W. 631, 633 (Tex. 1895) (where county attorney had statutory right and duty to sue county treasurer on his bond, commissioners court had no authority to displace him by employing private counsel to handle suit).

In *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918), the court addressed the constitutionality of a statute authorizing the comptroller to employ persons to bring tax collection suits in district and inferior courts to collect inheritance taxes. *See Maud*, 200 S.W. at 375-76. It found the statute consistent with Texas Constitution article V, section 21, by construing it as allowing other persons to assist the county attorney in subordination to his authority. *See id.* at 378; *see also Seagler v. Adams*, 238 S.W. 707, 708 (Tex. Civ. App.–Galveston 1922), *aff'd*, 250 S.W. 413 (Tex. 1923) (commissioners court may contract with attorneys to assist county or district attorney to bring suits to collect debts against officials and others).

In *Guynes*, the supreme court for the first time considered whether a commissioners court may employ a permanent legal staff to advise it in its various civil affairs. *See Guynes*, 861 S.W.2d at 861-62. The court determined that the Galveston County Commissioners Court, under the unique

facts presented in *Guynes*, could "legally employ staff attorneys to advise and represent it concerning civil matters." *See id.* at 862. The court addressed Government Code section 44.184, which provided that the Galveston County Criminal District Attorney "shall exclusively represent the state in all criminal matters before" the district courts and inferior courts in Galveston County and "shall represent Galveston County in any court in which the county has pending business." TEX. GOV'T CODE ANN. § 44.184(a) (Vernon 1988). Reading this provision in connection with the commissioners court's long-standing authority to seek legal assistance, the court found that the statute imposed on the Galveston County Criminal District Attorney an exclusive duty to represent the state in criminal matters, but no corresponding exclusive duty to represent the county in civil matters. *See id.* at 864. It noted that "the summary judgment record presents no evidence" that the commissioners court had delegated the criminal district attorney's duties. *Id.* Moreover, the criminal district attorney "clearly and unequivocally consented to the present arrangement for handling the county's civil legal affairs."[4] *Id.* "[B]ecause the Commissioners Court has not usurped or interfered with the duties of the Criminal District Attorney, because it may employ counsel to advise it concerning the affairs of the county, and because the Criminal District Attorney consented to the arrangement," the commissioners court could fund and use its legal department in conducting its civil legal affairs. *Id.* The *Guynes* court expressly reserved the question of the "limitations [that] might be imposed on the present arrangement should the Criminal District Attorney withdraw his consent." *Id.*

Attorney General Opinion GA-0074, in concluding that the El Paso County Bail Bond Board could not hire outside legal counsel, distinguished the facts and law in the question before it from those in *Guynes*. *See* Tex. Att'y Gen. Op. No. GA-0074 (2003) at 3. The legislature had vested the county attorney for El Paso County with "the primary duty . . . to represent the state, El Paso County, and the officials of El Paso County in all civil matters pending before the courts of El Paso County and any other courts in which the state, the county, or the officials of the county have matters pending." TEX. GOV'T CODE ANN. § 45.171 (Vernon Supp. 2004). The El Paso County Attorney moreover explicitly refused to consent to the employment of outside counsel. *See* Tex. Att'y Gen. Op. No. GA-0074 (2003) at 3.

## IV.     Authority of Fannin County Commissioners Court to Employ Private Counsel

You suggest that Attorney General Opinion O-7474 (1946) resolves your question. *See* Porter Brief, *supra* note 1, at 3. Attorney General Opinion O-7474 stated that the judicial decisions on a commissioners court's authority to employ private attorneys "have contemplated employment and remuneration of counsel by the Commissioners' Courts only for a specific litigation, or advice on a particular matter or problem." Tex. Att'y Gen. Op. No. O-7474 (1946) at 2. It concluded "that the law does not intend that the Commissioners' Court shall employ counsel on a salary basis to advise and represent it in whatever matters might arise." *Id.* However, the court in *Guynes* held that the commissioners court was authorized to employ a permanent legal staff to conduct its civil legal affairs. *See Guynes*, 861 S.W.2d at 864. *Guynes* effectively overruled the reasoning and conclusion

---

[4]The criminal district attorney's consent to the arrangement suggests that he found that the county legal office was providing assistance to him and not usurping his statutory duties. *See Guynes*, 861 S.W.2d at 864.

of Attorney General Opinion O-7474. The answer to your question is controlled by *Guynes*. *See* Tex. Att'y Gen. Op. No. GA-0074 (2003) at 3 (distinguishing *Guynes* to conclude that the El Paso County Bail Bond Board may not seek outside legal counsel without the consent of the county attorney).

A commissioners court may employ a private attorney to provide legal services as long as it does not encroach on the constitutional or statutory authority vested in the county attorney. *See Guynes*, 861 S.W.2d at 863. The constitution requires a county attorney to "represent the State in all cases in the District and inferior courts in their respective counties," but does not impose civil duties on county attorneys. TEX. CONST. art. V, § 21. The Fannin County Attorney does not have a general statutory duty to represent the county and its officers in civil actions. The Fannin County Commissioners Court will not usurp the county attorney's authority if it employs a private attorney to provide legal services that neither the constitution nor a statute vests in the county attorney. Under these circumstances, the commissioners court may retain private counsel as a salaried employee, without the county attorney's consent.

A private attorney employed by the Fannin County Commissioners Court may also give legal advice to the commissioners court, without usurping the county attorney's power to give legal opinions to the court. Government Code section 41.007 provides that

> [a] district or county attorney, *on request*, shall give to a county or precinct official of his district or county a written opinion or written advice relating to the official duties of that official.

TEX. GOV'T CODE ANN. § 41.007 (Vernon 1988) (emphasis added). The court in *Gibson v. Davis*, 236 S.W. 202 (Tex. Civ. App.–Galveston 1921, no writ), addressed the commissioners court's authority to employ private attorneys to advise it about the preparation of road bonds and render opinions about the legality of the bonds. *See Gibson*, 236 S.W. at 212. It stated that the predecessor of Government Code section 41.007

> was intended to impose a duty upon the county and district attorneys, and not as a restriction upon the commissioners' court in the employment of attorneys to advise and render services to the court in important matters coming before it for its consideration.

*Id.* Thus, section 41.007 does not bar the commissioners court from employing private attorneys to advise it. The Fannin County Commissioners Court may employ a private attorney as a salaried or hourly employee to provide it with legal advice.

## V.    Payment of Private Counsel from Road and Bridge Funds

You ask whether private counsel retained by the commissioners court on either a salary or hourly basis may be paid from road and bridge funds raised from (1) property taxes, (2) fees collected by the tax assessor-collector under Transportation Code chapter 508, (3) fuel taxes

collected by the state and disbursed to the county, (4) grants, (5) fines colleted by the district clerk, county clerk, or justice courts, (6) or grassland funds. *See* Supplemental Brief, *supra* note 2, at 1. Whether any of these funds may be used to compensate a private attorney retained by the commissioners court depends on the constitutional, statutory, or contractual provisions governing their disposition.

## A.    Property Taxes

Article VIII, section 9 of the Texas Constitution provides that a commissioners court may levy an annual property tax rate for each of four constitutional purposes: the general fund, the permanent improvement fund, the road and bridge fund, and the jury fund, the total not to exceed eighty cents per one hundred dollar property valuation. *See* TEX. CONST. art. VIII, § 9(b). Fannin County maintains the four constitutional funds.[5] A 1967 amendment to article VIII, section 9, authorizes a county to place all tax moneys into one general fund, without regard to the purpose or source of each tax. *See* TEX. CONST. art. VIII, § 9(d); Tex. H.J. Res. 3, 60th Leg., R.S., 1967 Tex. Gen. Laws 2979. The commissioners court of a county that maintains the four funds may by order transfer money from one constitutional fund to another. *See Lewis v. Nacogdoches County*, 461 S.W.2d 514, 518 (Tex. Civ. App.–Tyler 1970, no writ); Tex. Att'y Gen. Op. No. H-194 (1974) at 3-4. The fact that Fannin County places property tax funds in the county road and bridge fund does not prevent the commissioners court from transferring those taxes from that fund to the general fund to pay a private attorney on an hourly or salary basis.

Article VIII, section 9 permits the legislature to authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads. *See* TEX. CONST. art. VIII, § 9(c). The legislature has adopted Transportation Code section 256.052 implementing this provision. *See* TEX. TRANSP. CODE ANN. § 256.052 (Vernon 1999). The special road tax authorized by article VIII, section 9 may be used only for "the further maintenance of the public roads." TEX. CONST. art. VIII, § 9(c). A county may also levy an additional property tax under Texas Constitution article VIII, section 1-a, for the "construction and maintenance of Farm to Market Roads or for Flood Control, except as herein otherwise provided." *See* TEX. CONST. art. VIII, § 1-a. This additional property tax may be used only for its constitutionally designated purposes. *See* Tex. Att'y Gen. Op. No. H-530 (1975) at 2.

## B.    Motor Vehicle Registration Fees Collected by the County Tax Assessor-Collector

Article VIII, section 7-a of the Texas Constitution, which governs the use of motor vehicle registration fees, provides in part:

> Subject to legislative appropriation, allocation and direction, all net revenues remaining after payment of all refunds allowed by

---

[5]Telephone Conversation with Michael Skotnik, Assistant County Attorney, Fannin County (Dec. 29, 2003).

> law and expenses of collection derived from motor vehicle registration fees . . . shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads . . . .

TEX. CONST. art. VIII, § 7-a. *See* Tex. Att'y Gen. Op. No. JC-0250 (2000) at 1. Pursuant to its constitutional authority to allocate and direct the use of motor vehicle registration fees, the legislature has adopted Transportation Code chapter 502, which requires the annual registration of motor vehicles. *See* TEX. TRANSP. CODE ANN. § 502.002 (1999). A county tax assessor-collector or a deputy county tax assessor-collector is authorized to collect registration fees. *See id.* § 502.004(2). Section 502.102 requires the county tax assessor-collector to credit a stated amount of registration fees to the county road and bridge fund. *See id.* § 502.102 (Vernon Supp. 2004). *See also id.* § 502.103 (Vernon 1999) (crediting funds from optional fee imposed under Transportation Code section 502.172 to road and bridge fund). The registration fees credited to the county road and bridge fund may be used for the purposes stated in section 502.108, which generally relate to road and bridge construction, maintenance, and repair. *See id.* § 502.108(a) (Vernon Supp. 2004). *See* Tex. Att'y Gen. Op. No. JC-0250 (2000) at 2. These revenues are designated by the constitution and statutes to be used "for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of . . . laws . . . pertaining to the supervision of traffic and safety on such roads." TEX. CONST. art. VIII, § 7-a. These revenues may not be diverted to other purposes. *See Gulf Ins. Co. v. James*, 185 S.W.2d 966 (Tex. 1945); Tex. Att'y Gen. Op. No. JM-593 (1986) at 2 (if the constitution earmarks money for specific purposes, that money may be used for no other purpose).

## C.    Fuel Taxes Collected by the State and Disbursed to the County

Article VIII, section 7-a of the constitution also provides that revenues received from taxes on motor fuels and lubricants, subject to specific exceptions, may be used only for the purposes it states. *See* TEX. CONST. art. VIII, § 7-a. Thus, any fuel taxes within article VIII, section 7-a that are allocated to the county may be used only for the constitutionally authorized purposes.

## D.    Grants

You ask in general terms, without referring to a particular grant, whether road and bridge funds from grants may be used to compensate an attorney retained by the commissioners court. Grants are generally subject to terms and conditions, and the receiving entity must agree to comply with these as a condition of receiving the grant funds. *See generally* Tex. Att'y Gen. Op. No. M-894 (1971). Whether particular grant funds may be used to compensate an attorney depends upon the terms of the grant.

### E.    Traffic Fines

Transportation Code section 542.402 requires a county to use fines collected for highway violations under Transportation Code, title 7, to

> (1) construct and maintain roads, bridges, and culverts in the municipality or county;
>
> (2) enforce laws regulating the use of highways by motor vehicles; and
>
> (3) defray the expense of county traffic officers.

TEX. TRANSP. CODE ANN. § 542.402(a) (Vernon Supp. 2004). *See* Tex. Att'y Gen. Op. No. JM-158 (1984) at 2-4 (county must use DWI fines and related revenue for roads and can allocate it to treatment center). These fines must be used for the purposes stated in the statute.

### F.    Grassland Funds

Fannin County receives federal revenues in connection with the Caddo National Grasslands.[6] The Caddo grasslands were purchased by the United States Department of the Interior during the 1930s under the federal Bankhead-Jones Farm Tenant Act in an effort to return eroded land in the area to its natural state. *See* 7 U.S.C. § 1010 (2000) (title III, Bankhead-Jones Farm Tenant Act).[7] The Secretary of Agriculture[8] is required to pay to the county in which national grasslands are located 25 percent of the revenues the secretary receives from the use of the land during the year. *See id.* § 1012. Payments to counties "shall be made on the condition that they are used for school or road purposes, or both." *Id.* The county must use the federal payments of national grassland revenues for the purposes stated in the federal statute.

In summary, property taxes allocated to the Fannin County road and bridge fund established pursuant to article VIII, section 9(b) of the Texas Constitution may be transferred to the county's general fund to compensate a private attorney employed by the commissioners court on an hourly or salary basis to advise it and represent it in civil matters. Any county funds dedicated by the constitution, a statute, or the terms of a grant to road construction and maintenance may not be allocated to other purposes. Whether the commissioners court may use particular funds to compensate an attorney must be decided on a case-by-case basis.

---

[6]*See id.*

[7]*See also* "CADDO NATIONAL GRASSLAND," The Handbook of Texas Online, *available at* http://www.tsha.utexas.edu/handbook/online/articles/print/CC/gkc8.html.

[8]The grasslands are administered by the United States Department of Agriculture as part of the National Forest System. *See* 36 C.F.R. § 213.1 (2003); 16 U.S.C. § 1609(a) (2000).

### S U M M A R Y

Provided that it does not delegate duties constitutionally or statutorily vested in the county attorney's office, the Fannin County Commissioners Court may employ legal counsel to advise and represent it in civil matters, without securing the county attorney's consent. County funds dedicated by the constitution, a statute, or the terms of a grant to road construction and maintenance may not be allocated to other purposes.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee